531 So.2d 203 (1988)
Harvey Lewis PATTEN, Appellant,
v.
STATE of Florida, Appellee.
No. 86-2928.
District Court of Appeal of Florida, Second District.
September 7, 1988.
*204 James Marion Moorman, Public Defender, and A. Anne Owens, Asst. Public Defender, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Davis G. Anderson, Jr., Asst. Atty. Gen., Tampa, for appellee.
PARKER, Judge.
This is Patten's second appeal of his sentence for grand theft. He again attacks the trial judge's departure upward from the recommended guidelines sentence. We reverse.
In reversing, we are fully cognizant of the frustrations which the trial court faced when it sought to resolve the anomalous situation presented by this case. However, we believe the scope of the case law interpreting the sentencing guidelines prohibits the instant departure. Although the sentence imposed in this case seems logical, the application of the sentencing guidelines to particular circumstances continues to defy logic.
Patten committed the primary offense of grand theft in Polk County on January 13, 1985. He was convicted of that offense on July 25, 1985 and, on appeal, this court affirmed his conviction but reversed the *205 departure sentence of community control.[1]Patten v. State, 492 So.2d 748 (Fla. 2d DCA 1986). By mandate issued on August 19, 1986, this court directed the trial court on remand to sentence Patten "in accordance with the suggested guidelines" which initially called for a first cell sentence of any nonstate prison sanction. On resentencing, which occurred on October 16, 1986, the trial court imposed a three-year term of imprisonment yielding a third cell treatment under the guidelines. Between the date of his original Polk County offense and the date of the resentencing on that offense, Patten committed another grand theft in Hillsborough County for which he was convicted and placed on probation on May 23, 1986. Because Patten used the alias of Eddie Smith in Hillsborough County, his Polk County offenses were not discovered and therefore were not factored into the Hillsborough County sentence. Since, upon resentencing for the Polk County crime, the trial judge could not consider Patten's subsequently committed Hillsborough County offense as prior record, he used it as a ground for departure. The trial judge below, in his order of departure, said:
[T]he defendant absconded from his community control program which was not superseded on appeal. In addition, the defendant was convicted of grand theft on May 23, 1986, in Hillsborough County and sentenced to probation. The defendant was arrested and convicted in Hillsborough County under the fictitious name of Eddie Smith.
Initially, it is important to note that Patten's sentence on remand, which once more represented a departure from the recommended range, violated the express mandate of this court. Absent permission to do so, a trial court is without authority to alter or evade a district court of appeal's mandate but, rather, must give precise effect to that dictate. Stuart v. Hertz Corp., 381 So.2d 1161 (Fla. 4th DCA 1980).
Setting aside the trial court's lack of observance of this court's dictate, this appeal turns upon the appropriate interpretation of Shull v. Dugger, 515 So.2d 748 (Fla. 1987), as it applies to the present circumstances. The dissent interprets Shull in such a manner as to allow a post-sentencing conviction to be used as a new basis for exceeding the presumptive range upon remand, following the reversal of a departure sentence in which all the reasons stated in the original departure order were found to be invalid. According to the dissenting opinion, since the grand theft conviction did not exist at the time of the original sentencing, it is not prohibited by Shull and Brumley v. State, 520 So.2d 275 (Fla. 1988), which follows the holding in Shull, as a ground for departure upon resentencing. Such a strained interpretation of Shull and its attendant implications compel us to disagree with the dissent.
The reasoning of the dissent is incompatible with the supreme court's expressed intent in its Shull decision that
We believe the better policy requires the trial court to articulate all of the reasons for departure in the original order. To hold otherwise may needlessly subject the defendant to unwarranted efforts to justify the original sentence and also might lead to absurd results. One can envision numerous resentencings as, one by one, reasons are rejected in multiple appeals. Thus, we hold that a trial court may not enunciate new reasons for a departure sentence after the reasons given for the original departure sentence have been reversed by an appellate court.
Shull, 515 So.2d at 750.
The dissent seizes upon the following quoted language from Brumley (citing Shull) that "a trial court must articulate all of the reasons for departure in the original order and cannot enunciate any new reasons for departure after reversal of the original sentence," to support its conclusion in this case. That language, however, *206 should be examined in the context in which it arose. By including this language in its Brumley opinion, the supreme court merely sought to prohibit an exception which had been drawn by the district courts to the general rule requiring resentencing within guidelines under circumstances similar to those present in this case. Shull, 515 So.2d at 749-50. The exception which was created involved those situations in which the sole departure reason was valid at the time of sentencing but subsequently became invalid by virtue of a supreme court decision, for example, habitual offender status. In those particular cases of which Brumley was one, the appellate courts had held that the trial court on remand could again depart if it could state valid reasons for departure which existed in the record at time of the original sentencing.
Although the supreme court in Brumley only directed its holding to the specific circumstances before it, which are different from those presented in this case  departure reasons here occurred after original sentencing  Brumley nonetheless signifies the supreme court's rejection of an exception being created to the general rule stated in Shull similar to that sought to be established by the dissent. Shull clearly enunciates that on remand after a reversal of a guidelines departure for failure to provide a valid reason for the departure, the trial court is prohibited from providing any new reasons to exceed the original recommended sentence. Brumley simply restates the holding of Shull. Both cases unequivocally prohibit new reasons for departure after reversal of the original sentence.
Under the dissent's interpretation of Shull, the departure grounds stated by the trial court on resentencing, if valid, would support affirming Patten's sentence since all these reasons occurred after the original sentencing. The first and third reasons, however, are invalid. The first reason contained in the resentencing order that "defendant absconded from his community control program" is not a valid ground to depart beyond the one cell bump permitted under the guidelines. See Fla.R. Crim.P. 3.701(d)(14); Myrick v. State, 497 So.2d 728 (Fla. 2d DCA 1986).
We perceive no inconsistency with our interpretation of Shull had the trial court on resentencing merely enhanced Patten's sentence one cell from the original recommended sentence of "any nonstate prison sanction" under the above rule for his violation of community control.[2]See Royal v. State, 508 So.2d 1313 (Fla. 2d DCA 1987); Lockett v. State, 516 So.2d 46 (Fla. 4th DCA 1987). Such a one cell enhancement does not produce a departure sentence with the accompanying requirement of reasons but, rather, is consistent with the imposition of the "appropriate guidelines sentence" required under Shull and falls within the "suggested sentencing guidelines" mandated by this court. See Patten, 492 So.2d at 748. Therefore, there is no reason why on further resentencing, the trial court may not be permitted to impose the enhanced sentence of community control or twelve to thirty months incarceration. See Fla.R.Crim.P. 3.701(d)(14). The third reason listed as a basis for departure, i.e., that Patten furnished a fictitious name when arrested on a subsequent grand theft charge in Hillsborough County, is also improper. See Fla.R.Crim.P. 3.701(d)(11); Denson v. State, 493 So.2d 60 (Fla. 2d DCA 1986).
The dissent, however, focuses on the second reason offered by the trial judge for departure *207  subsequent grand theft conviction  as the basis for upholding Patten's sentence. In support of its position, the dissent relies upon a line of cases represented by Merriex v. State, 521 So.2d 249 (Fla. 1st DCA 1988); Pugh v. State, 499 So.2d 54 (Fla. 1st DCA 1986); Falzone v. State, 496 So.2d 894 (Fla. 2d DCA 1986); Prince v. State, 461 So.2d 1015 (Fla. 4th DCA 1984); Davis v. State, 455 So.2d 602 (Fla. 5th DCA 1984).[3] These cases all involve an interpretation of "prior record," defined under Florida Rule of Criminal Procedure 3.701(d)(5)(a), as those offenses which were committed before the primary offense at conviction and for which convictions were also obtained. Following from that definition, the courts in those cases held that such subsequent criminal conduct not factored as "prior record" could be used as a proper means to deviate from the recommended sentence.
By comparison in Smith v. State, 518 So.2d 1336 (Fla. 5th DCA 1987), which the dissent relies upon by analogy in support of its opinion, the court held that offenses committed before the primary offense but for which convictions were not obtained until after initial sentencing could be scored as "prior record" on resentencing. The result in Smith was an increased presumptive range while still yielding a sentence "within the presumptive guidelines range," (emphasis supplied) as directed by the district court in that case.
None of the above cases, however, implicate the previously explained principle established in Shull  no new departure reasons permitted on resentencing if previous reasons found invalid  and, as such, are inapposite to the case before us. First, all the cases but one, Merriex, were decided prior to Shull. As a result, these cases are not instructive in deciding this case since an application of the Shull holding would likely produce a different outcome.
With regard to Merriex, the defendant in that case was arrested and convicted of a subsequent offense after he entered into a plea agreement and was released on bond for the initial offense of sale of cocaine. At the sentencing on the sale offense, the trial court departed from the guidelines sentence giving as its reason the subsequent offense. The Merriex court simply held that the subsequent offense and conviction were valid grounds for departure. The situation addressed in Shull was never present in Merriex, however, since in the latter case there was no previous sentencing at which departure reasons were held to be invalid. While we accept the conclusion reached in the above line of cases that a subsequent conviction can be a proper basis to depart when it cannot be factored as "prior record," we reject the extension of that holding to a resentencing situation like that present in Shull.
Even if Shull may be avoided under the present circumstances as the dissent suggests, we find another line of cases, in which a departure sentence is imposed following a violation of probation for the reason that a subsequent conviction evidences a continuing or escalating pattern of criminal activity, more analogous to the instant situation than the cases represented by Merriex. See State v. Pentaude, 500 So.2d 526 (Fla. 1987). The rationale for permitting such a sentencing departure is that the underlying reasons for the probation violation, *208 or as in this case the violation of community control, are sufficiently egregious. Id.
Recently, our court, citing Pentaude, disapproved as a departure reason a defendant's commission of a subsequent trafficking offense within seventeen months of serving a sentence of probation imposed on his initial conviction for trafficking in cocaine. Medina v. State, 526 So.2d 216 (Fla. 2d DCA 1988). It appears inconsistent to hold that the trial court may depart from a first to third cell sentence in this case on the basis of a subsequent offense of grand theft which occurred within fifteen months of Patten's original sentence, if Medina disapproves a second cell departure predicated on a later trafficking offense committed seventeen months after the original sentence.
While we appreciate the trial court's dilemma, noting that even if Hillsborough County could convict Patten for perjury for lying to the court concerning his name and past criminal history, the permissible guidelines range would still limit the trial court in that county to a second cell guidelines sentence,[4] we are constrained to follow Shull, which we believe prohibits the result reached by the dissent.
Based upon the foregoing reasons, we reverse Patten's sentence and remand the case to the trial court for the imposition of the recommended guidelines sentence which may be enhanced to the next cell by virtue of Patten's violation of community control.
Reversed and remanded.
FRANK, J., concurs.
CAMPBELL, C.J., dissents with opinion.
CAMPBELL, Chief Judge, dissenting with opinion.
I respectfully dissent. This appeal is another in the myriad of appeals involving sentencing guidelines that are to the criminal justice system and the appellate courts of Florida what the infamous albatross was to Coleridge's Ancient Mariner. See Elkins v. State, 489 So.2d 1222 (Fla. 5th DCA 1986); Merriex v. State, 521 So.2d 249, 250 (Fla. 1st DCA 1988) (Zehmer, J., specially concurring). Perhaps it is the frustrations of the law, as it is sometimes interpreted and often applied, that leads us as jurists to the field of literature, not only in an attempt to more eloquently or fervently express our concern and respect for the law, but also to find some solution and solace in the writing of other authors who have considered those same or similar frustrations and vagaries in its application. Mr. Bumble in Dickens' Oliver Twist muttered his frustration that "[i]f the law supposes that, the law is a ass  a idiot." One wonders today what Bumble's mutterings would have been had he encountered our sentencing guidelines whose ostensible purpose was to introduce logic and consistency into the sentencing process.
This is appellant's second appeal of his sentence for grand theft. He again attacks the trial judge's departure upward from the recommended guidelines sentence. I would affirm.
The circumstances appear to be unique. The dilemma confronting the trial judge and created by the peculiar facts of this case required a consideration of two equally established precedents that are, in this case, apparently opposed to each other. The first of those precedents is the rule stated in Shull v. Dugger, 515 So.2d 748, 750 (Fla. 1987), that a trial court may not enunciate new reasons for a departure sentence after the reasons given for the original departure have been reversed by an appellate court. Numerous decisions of the courts of this state have applied Shull. Most of them do not contain any detailed statement of the facts of the case. Each of them, however, in rather broad general *209 terms reaches the same general conclusion that after a departure sentence is reversed, the trial court, on remand, may not enunciate entirely new reasons for departure at resentencing, but must sentence the defendant within the presumptive guidelines range. See Brumley v. State, 520 So.2d 275 (Fla. 1988); Velazguez-Velazguez v. State, 523 So.2d 774 (Fla. 3d DCA 1988); Sarria v. State, 523 So.2d 727 (Fla. 3d DCA 1988); Dean v. State, 523 So.2d 165 (Fla. 1st DCA 1988); Harris v. State, 520 So.2d 688 (Fla. 3d DCA 1988); King v. State, 520 So.2d 310 (Fla. 2d DCA 1988); Matire v. State, 520 So.2d 292 (Fla. 4th DCA 1988).
The problem with that broad general statement of the Shull rule is that it does not contemplate the time sequences of events and circumstances of this case or those illustrated by Smith v. State, 518 So.2d 1336 (Fla. 5th DCA 1987) (Smith II). It seems to me that the more correct interpretation of Shull is that on remand, after a departure sentence is reversed, the trial judge may not again depart based on newly enunciated reasons that existed at the time of the original sentencing.
To take that principle one step further, I conclude that it is proper for a trial judge to depart again, on remand, if there are valid reasons for departure that have occurred because of the defendant's conduct in the interval between the original sentencing procedures and the resentencing on remand. Our supreme court seems to imply what I have concluded when it states in Brumley: "In Shull v. Dugger, 515 So.2d 748 (Fla. 1987), we held that a trial court must articulate all of the reasons for departure in the original order and cannot enunciate any new reasons for departure after reversal of the original sentence by an appellate court." 520 So.2d at 276.
Thus, it seems to me that in Brumley, when the court requires that all reasons for departure must be in the original order, it necessarily means those reasons which existed at the time of the original order. Interpreted in that manner, Shull would not prohibit utilizing those reasons for departure on resentencing that have occurred since the original order. Interpreted this way, Shull also does not violate the other precedent involved here and enunciated in the line of cases represented by Merriex; Pugh v. State, 499 So.2d 54 (Fla. 1st DCA 1986); Falzone v. State, 496 So.2d 894 (Fla. 2d DCA 1986); Prince v. State, 461 So.2d 1015 (Fla. 4th DCA 1984); Davis v. State, 455 So.2d 602 (Fla. 5th DCA 1984).
The principle stated in each of those cases is that while a new offense committed after the offense for which a defendant is being sentenced cannot be scored on the scoresheet as "prior record," it may be used as a grounds for departure if the defendant is convicted of the subsequent offense prior to his sentencing on the primary offense. Fla.R.Crim.P. 3.701(d)(5)(a). Prince, regardless of the disagreement by the majority, is, in my consideration, factually very close to the circumstances of this case.
The only real difference in Prince is that on Prince's first appeal, his conviction and sentence were reversed and the case was remanded for a new trial. After Prince's conviction on his retrial, the trial judge based his departure on offenses that Prince committed and was convicted of after his first reversal and before his new trial. That departure sentence was affirmed on Prince's second appeal.
In the case before us, appellant committed his primary offense of grand theft in Polk County on January 13, 1985. He was convicted on July 25, 1985 and, on appeal, this court affirmed his conviction but reversed his departure sentence and remanded for resentencing within the presumptive guideline range. Patten v. State, 492 So.2d 748 (Fla. 2d DCA 1986). Resentencing on remand took place on October 16, 1986. Between the date of his original Polk County offense of January 13, 1985, and the date of the resentencing, appellant committed another grand theft in Hillsborough County for which he was convicted and placed on probation on May 23, 1986. Because appellant used the alias of Eddie Smith in Hillsborough County, his Polk County offenses were not discovered or factored into the Hillsborough County sentence. *210 Since, on resentencing in this case in Polk County, the trial judge could not consider his subsequently committed Hillsborough County offense as prior record, he used it as a ground for departure. Falzone; Prince. The trial judge below, in his order of departure, said:
[T]he defendant absconded from his community control program which was not superseded [sic] on appeal. In addition, the defendant was convicted of grand theft on May 23, 1986 in Hillsborough County and sentenced to probation. The defendant was arrested and convicted in Hillsborough County under the ficticious name of Eddie Smith.
The reasoning of Judge Upchurch in the recent case of Smith II is extremely helpful for purposes of analogy with this case. In Smith II, the court approved on resentencing a new increased sentence that resulted from the use of a new scoresheet that scored as "prior offenses" offenses that had been committed prior to the commission of the primary offense, but for which convictions had not been obtained until after the original sentencing on the primary offense and before resentencing. Using that same reasoning and analogy, I would conclude that it was proper for the trial judge here to consider, for departure purposes, the additional offenses where both the commission and convictions for the subsequent offense took place after the commission of the primary offense but prior to resentencing after our previous remand.
A final observation is merited by the majority's concern with their view that the trial court failed to obey our mandate issued on Patten's first appeal. I am not so concerned with that issue because if the trial judge improperly violated our mandate, there is a remedy for that violation. See Modine Manufacturing Co. v. ABC Radiator, Inc., 367 So.2d 232 (Fla. 3d DCA 1979). Moreover, our mandate involved resentencing, a matter peculiarly and traditionally within the discretion of the trial court. As a matter of fact, our mandate directs the trial judge to conduct further sentencing proceedings "in accordance with the opinion of this Court and with the rules of procedure and laws of the State of Florida." (Emphasis supplied.) The majority even suggests that it would be permissible for the trial court to have imposed a one-cell enhancement on the suggested guideline sentence as a result of appellant's violation of his community control which also occurred subsequent to his previous sentence. While the majority can "perceive no inconsistency" with that position, my perception is not so clear.
In Smith II for instance, the fifth district considered a resentencing that resulted from Smith's first appeal wherein the court reversed a departure sentence and "remanded for resentencing within the presumptive guideline range." Smith v. State, 495 So.2d 876 (Fla. 5th DCA 1986) (Smith I). On remand, the trial court utilized a new scoresheet that included convictions factored into the scoresheet which were not previously available for consideration. The court in Smith II approved the utilization of that new scoresheet containing the convictions previously unavailable. It defies my sense of logic to permit utilization after mandate of a new scoresheet containing newly available offenses but to refuse to permit the trial court to utilize newly available reasons for the purpose of departure.
The courts of this state have consistently recognized that new matters may be considered on remand with prior permission of the appellate court. Rinker Materials Corp. v. Holloway Materials Corp., 175 So.2d 564 (Fla. 2d DCA 1965). Yet, it is beyond dispute that we do not render advisory opinions. State v. Vogel, 415 So.2d 821, 822 (Fla. 2d DCA 1982). I, like the trial judge, am not sure how this matter could have been more properly handled.
I would affirm.
NOTES
[1] The community control sentence was found to be illegal since it exceeded the guideline's recommended range and was not supported by valid written reasons for departure. See Hall v. State, 511 So.2d 1038, 1043 n. 12 (Fla. 1st DCA 1987) (citing Williams v. State, 500 So.2d 501 (Fla. 1986)).
[2] Although the community control sentence was later reversed by this court, Patten did not file a supersedeas bond in the trial court following his sentence and filing of the appeal in this court. A trial court retains jurisdiction to enforce the terms of an unsuperseded judgment so as to confer authority upon the trial court to consider an unstayed violation of probation. Bush v. State, 369 So.2d 674 (Fla. 3d DCA 1979). There is no reason why Patten's violation of community control, without a stay, should be treated differently. Further, the subsequent vacation of an illegal sentence does not affect a conviction for escape while the sentence is being served. Nichols v. State, 509 So.2d 1243 (Fla. 2d DCA 1987). By analogy, since Patten was placed on community control, under color of law, his absconding from that sentence even if illegal, when not stayed, should permit a sentence bump into the second cell.
[3] The dissent improperly finds Prince to be factually very close to the present case and further incorrectly states "that [Prince's] departure sentence was affirmed on Prince's second appeal from the departure sentence." While there were two appeals in Prince, there was but a single appeal from a departure sentence. In Prince's first appeal, his 1983 convictions and sentences, rendered before the effective date of the sentencing guidelines, were reversed and a new trial ordered. After a retrial, Prince elected to be sentenced under the then new sentencing guidelines. The trial court departed from the recommended range, listing as the reason two subsequent convictions occurring after the reversal but before retrial. The fourth district, relying on Davis, declared a sentencing departure was permitted because Prince demonstrated an escalating pattern of criminal activity. Although the departure sentence was affirmed, the cause was remanded for the trial court to comply with Florida Rule of Criminal Procedure 3.701(d)(11), requiring that departure reasons be set forth in a separate writing. Similarly, the defendant in Davis had been sentenced under the then new sentencing guidelines after he violated a previously imposed term of probation.
[4] By our calculation, based upon a primary offense of perjury, and a factoring of one prior second-degree felony, two prior third-degree felonies, two prior misdemeanors, plus legal constraint at the time of the primary offense, all occurring within six years, Patten's score would fall within the second cell for purposes of determining his recommended sentence under the guidelines.