555 So.2d 362 (1990)
Richard Dial THORP, Petitioner,
v.
STATE of Florida, Respondent.
No. 73767.
Supreme Court of Florida.
January 11, 1990.
Mary Catherine Bonner, Fort Lauderdale, for petitioner.
Robert A. Butterworth, Atty. Gen., and Alfonso M. Saldana, Asst. Atty. Gen., West Palm Beach, for respondent.
PER CURIAM.
We have for review Thorp v. State, 537 So.2d 205 (Fla. 4th DCA 1989), based on conflict with Pugh v. State, 499 So.2d 54 (Fla. 1st DCA 1986), and Hunt v. State, 468 So.2d 1100 (Fla. 1st DCA 1985). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
*363 Thorp first committed a federal crime. Thereafter, he committed certain drug offenses which are the subject of this proceeding. He was later convicted of the federal crime. Finally, he was convicted of the drug offenses. At sentencing, the trial judge factored Thorp's prior federal conviction into the guidelines scoresheet even though that conviction was obtained subsequent to the commission of the subject offenses.
As the court below acknowledged, there is a conflict among the district courts of appeal on whether a subsequent conviction for prior criminal conduct must be factored into the scoresheet. The court opted to follow the decisions of the Second District Court of Appeal on the subject and affirmed the sentence.
The source of the disagreement is a single sentence in the Florida Rules of Criminal Procedure. After providing that a defendant's "prior record" shall be scored as additional offenses, thereby increasing the length of a guidelines sentence, the guidelines then defines "prior record" as
any past criminal conduct on the part of the offender, resulting in conviction, prior to the commission of the primary offense.
Fla.R.Crim.P. 3.701(d)(5)(a). In Frank v. State, 490 So.2d 190 (Fla. 2d DCA 1986), the Second District Court of Appeal reasoned that because of the placement of the commas setting off the words "resulting in conviction," the rule meant that only the past conduct must occur before the commission of the primary offense and that the crimes should be scored so long as a conviction is obtained before sentencing. Id. at 192 n. 1. In a later decision, that court elaborated:
Aside from the placing of the commas relied upon in Frank, we see no reason why the rule would seek to exclude from guidelines computation those convictions which occur between the commission of the subject offense and the sentencing for that offense. The theory of giving the criminal an opportunity to reform which requires that the conviction of the prior crime predate the commission of the subject offense before it can be considered in sentencing under a recidivist statute, Joyner v. State, 158 Fla. 806, 30 So.2d 304 (1947), is not pertinent to sentencing under the guidelines. The use of the guidelines presupposes that all pertinent information concerning the defendant has been considered in determining the proper length of his sentence.
Falzone v. State, 496 So.2d 894, 896 (Fla. 2d DCA 1986). On the other hand, the First District Court of Appeal has interpreted the rule to mean that past criminal conduct can be scored only if it resulted in conviction before the offense under consideration. Hunt; Pugh. That court has only allowed subsequent convictions to be considered as valid reasons for departure from the guidelines. Id.
Both interpretations of the rule are reasonable. However, we believe that the position of the Second District Court of Appeal is more consistent with the philosophy of the sentencing guidelines. The guidelines contemplate substantial uniformity in sentencing. Departure sentences are exceptions to the norm. The guidelines schedules are based upon relevant information concerning the nature of the offender's crime and his prior record. There is little reason why prior record should not include all past crimes for which convictions have been obtained before sentencing. To hold otherwise would encourage needless departures predicated upon unscored convictions.
We approve the decision below. We disapprove the opinions in Hunt and Pugh to the extent they conflict with this opinion.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD, SHAW, BARKETT and GRIMES, JJ., concur.
KOGAN, J., dissents with an opinion.
KOGAN, Justice, dissenting.
In Smith v. State, 536 So.2d 1021 (Fla. 1988), this Court addressed an issue that differed in only one material respect from that posed by the present case. In Smith, *364 the subsequent convictions factored into the defendant's scoresheet occurred during his successful appeal from an earlier sentence, not during the time between commission of the crime and sentencing. We held in Smith that general principles of equity as well as the policy announced in Shull v. Dugger, 515 So.2d 748 (Fla. 1987),[1] forbade the trial court on remand from revising the scoresheet to reflect the new convictions:
If Smith had been properly sentenced in the initial proceeding, he would not be facing life imprisonment. To sustain the life sentence would be to punish Smith for the trial court's mistakes. The more equitable result is to place him in the position he would have been in absent the court's error.
Smith, 536 So.2d at 1022. I see no reason why the logic of Smith should not be extended to the situation before us today.
Indeed, as the majority notes, the present controversy at heart is a dispute over the meaning of two commas in rule 3.701(d)(5)(a), Florida Rules of Criminal Procedure. In the rule, the phrase "resulting in conviction" is placed in a manner that usually would suggest that it modifies the noun "offender." However, this interpretation would render the sentence nonsensical; an "offender" cannot "result[] in conviction."[2] The Second District quite sensibly surmounted this problem by construing the phrase as modifying the noun "conduct." As a result, the sentence would be read to mean that prior record includes "any past criminal conduct ..., resulting in conviction, prior to the commission of the primary offense."
However, a further problem immediately arises from the placement of the last comma: whether the phrase "prior to the commission of the primary offense" modifies the phrase "past conduct" or the phrase "resulting in conviction."
The Second District has held to the former view. This construction effectively inverts the last two clauses of the sentence so that prior record now would include "any past criminal conduct, prior to the commission of the primary offense, resulting in conviction." See Thorp, 537 So.2d at 205.
The First District, on the other hand, has held to the latter construction, thus concluding that prior record means "any past criminal conduct resulting in conviction prior to the commission of the primary offense." Pugh v. State, 499 So.2d 54 (Fla. 1st DCA 1986); Hunt v. State, 468 So.2d 1100 (Fla. 1st DCA 1985).
Based on both grammar and the policy elaborated in Smith, I would find the First District's construction more sensible. The reading favored by the Second District requires a complete rearrangement of the sentence, in effect transposing the last two clauses. This in turn renders the entire phrase "prior to the commission of the primary offense" redundant, since "past conduct" almost always will occur prior to the primary offense. A construction that renders language redundant or meaningless should be disfavored. Snively Groves, Inc. v. Mayo, 135 Fla. 300, 184 So. 839 (1938); Vocelle v. Knight Bros. Paper Co., 118 So.2d 664 (Fla. 1st DCA 1960).
*365 The reading favored by the First District requires no such verbal acrobatics and gives effect to all the language. Moreover, well-established rules of construction favor the First District's approach. Under the doctrine of the last antecedent, see Kirksey v. State, 433 So.2d 1236, 1241 (Fla. 1st DCA 1983), the phrase "prior to the commission of the primary offense" should be read as modifying the phrase "resulting in conviction" because the former immediately follows the latter. Id.
The general policies underlying the guidelines also support the First District's approach to this problem. In factoring a prior record into the scoresheet, the trial court's perspective should be retrospective from the time of the offense. The punishment computed in this way should be appropriate for the offense under consideration and all that went before it, not for events that came afterward. In exceptional cases, the trial court still could impose an additional punishment by departing from the guidelines recommendation based on any permissible reasons. Thus, adequate provision would exist for meting a greater sanction when one is due, provided it is done by departure and not by factoring subsequent convictions into the scoresheet.
For these reasons, I would approve the analysis of the First District and quash the opinion under review.
NOTES
[1] In Shull v. Dugger, 515 So.2d 748, 749 (Fla. 1987), we stated that "when all of the reasons stated by the trial court in support of departure are found invalid, resentencing following remand must be within the presumptive guidelines sentence" (emphasis added). Obviously, both Smith v. State, 536 So.2d 1021 (Fla. 1987), and the present case deal, not with departure sentences, but with convictions that are actually factored into the scoresheet. This factoring results in a presumptive prison sentence that is binding upon the trial court unless valid reasons for departure exist.
[2] For this reason, I am unpersuaded by the state's reliance on the doctrine of the last antecedent. See Kirksey v. State, 433 So.2d 1236, 1241 (Fla. 1st DCA 1983), review denied, 446 So.2d 100 (Fla. 1984). Under this rule of construction, relative and qualifying words and phrases are read as modifying the word or clause immediately preceding, not those that are more remote. Here, the state does not even attempt to argue that the phrase "resulting in conviction" modifies the word or clause immediately preceding it, which is the phrase "on the part of the offender." Rather, the state argues that "resulting in conviction" modifies "past criminal conduct," which is the more remote clause. Thus, the rule on which the state relies undermines the state's own argument.